IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| TAMMY M. ROONEY, | ) Civil Action No. 2:24-CV-01692-CBB |
| Plaintiff, | ) |
| vs. | ) United States Magistrate Judge<br>) Christopher B. Brown |
| FRANK BISIGNANO,[1]<br>COMMISSIONER, SOCIAL<br>SECURITY ADMINISTRATION, | ) |
| Defendant, | |

**MEMORANDUM OPINION[2]**
**ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 11**

**I.   Introduction**

Plaintiff Tammy Rooney filed her claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434, on August 9, 2022. ECF No. 12 at 1. Specifically, Rooney claimed that she became disabled beginning July 8, 2022 due to gastroparesis, hypertension, arthritis, irritable bowel syndrome, generalized anxiety disorder, major depressive disorder, panic disorder, and a blood clot in the right leg. *Id.*

---

[1]   Frank Bisignano is substituted as the Defendant in this matter, pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g). The Clerk is directed to amend the docket to reflect this change.

[2]   All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. See 28 U.S.C. § 636, et seq.

Rooney's claims were denied initially and then again on reconsideration. ECF No. 3-2 at 11. She sought a hearing before an Administrative Law Judge ("ALJ") on December 8, 2023. *Id.* In a March 6, 2024 decision, the ALJ denied Rooney's request for benefits and found that Rooney was not disabled under the Act. *Id.* The Appeals Council declined to review the ALJ's decision on October 29, 2024. ECF No. 3-2 at 2. On December 13, 2024, Plaintiff filed a timely appeal with this Court and filed a motion for summary judgment. ECF No. 1.

Rooney's motion for summary judgment is fully briefed and ripe for consideration. ECF Nos. 11-12, 16-17. As set forth in more detail below, Rooney's motion is DENIED. The decision of the ALJ will be AFFIRMED.

## II.    Factual Background

The following summary is limited to information relevant to the current appeal. Rooney was 50 years old at the onset of her alleged disability on July 8, 2022. ECF No. 3-2 at 23. She had previously worked as a cake decorator but testified that she stopped working because of the amount of bathroom breaks caused by her irritable bowel disease. *Id.* at 23, 50-51. Rooney also has anxiety and depression, and works with a licensed clinical social worker, Michelle Braun, and a physician's assistant Geena Edmonds. *Id.* at 16, 19. Rooney is in a custody dispute and seeking custody of her grandchildren. *Id.* at 19.

Among other medical testimony, there are four key psychological opinions and one psychological evaluation in the present record. In a January 24, 2023 psychological consultation with psychologist Gina Lombardi, Rooney complained of waking in the middle of the night, sad moods, crying spells, loss of interest,

irritability, agitation, fatigue, concentration problems, social withdrawal, worry, restlessness, difficulty concentrating, and avoidance of social settings. ECF No. 3-8 at 63. Lombardi opined that, among other things, Rooney had a "marked" limitation in her ability to understand, remember, and carry out complex instructions and interact appropriately with supervisors and co-workers. *Id.* at 66-67. Lombardi also opined that Rooney had a "moderate" limitation on her ability to make judgments on simple work-related decisions and interact appropriately with the public, and "mild" limitations on her ability to understand, remember, and carry out simple instructions. *Id.* She did not provide a specific limitation on Rooney's abilities related to concentration, persistence, and pace. *Id.*

Rooney's treating mental health provider, Michelle Braun, also provided an opinion form regarding Rooney's psychological condition. Braun began seeing Rooney in 2022 for an adjustment disorder with anxiety and depression. *Id.* at 134. Braun opined that Rooney was not limited in her ability to concentrate, persist, or maintain pace and that she would be able to maintain concentration for one hour before needing redirection or a break. *Id.* at 136-38.

Geena Edmonds – a physician's assistant who treated Rooney for her mental health concerns – evaluated her on February 10, 2023. *Id.* at 77-79. Edmonds stated in the evaluation that Rooney had normal attention, concentration, short and long term memory, and reasoning, and was able to do simple calculations and serial sevens. *Id.* Rooney visited Edmonds again in March, May, and June 2023 but there were no other clinical notes available. *Id.* at 140.

3

Two state agency psychologists also provided opinions. The state agency psychologists said that Rooney had "severe" mental impairments. ECF No. 3-3 at 5; 16. They found Rooney had "moderate" limitations in concentrating, persisting, or maintaining pace, and "mild" limitations in the other areas of mental abilities. ECF *Id.* The state psychologists opined that Rooney could perform one to two-step tasks and could understand, retain, and follow simple job instructions. *Id.* at 9; 21.

### III. The ALJ Decision

The following summary is limited to information relevant to the current appeal. At step one of the sequential analysis, the ALJ found Rooney had not engaged in substantial gainful activity since her alleged disability onset date. ECF No. 3-2 at 14. At step two, the ALJ found Rooney had multiple severe impairments including anxiety and depression, diverticulosis, irritable bowel syndrome, gastroesophageal reflux disease, obesity, gastroparesis, hypertension, bilateral venous insufficiency, superficial thrombophlebitis, and degenerative disc disease of the lumbar spine. *Id.* At step three, the ALJ found Rooney did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 15. In relevant part, the ALJ also found that Rooney has "moderate" limitation in concentration, persistence, and pace. *Id.* at 16.

At step four, the ALJ then found Rooney has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b). *Id.* at 17. Among other physical limitations, the RFC also included three mental limitations:

- Only simple, routine tasks involving simple work-related decisions;

4

- Occasional interaction with coworkers and supervisors, and no interaction with the public and

- Few changes to work process and setting

*Id.*

Relying on the RFC, the ALJ found Rooney could not perform her past relevant work.  *Id.* at 23.  At step five and relying on the testimony of the Vocational Expert, the ALJ found Rooney could perform several jobs that exist in significant numbers in the national economy, including the representative occupations of bottle packer, a marker, and a mail sorter. *Id.* at 24.  Each of the jobs identified by the Vocational Expert have a reasoning level of 2 or 3 as defined by the Dictionary of Occupational Titles ("DOT"). *See* DOT definitions bottle packer (DOT code: 920.685-026, reasoning 2); marker (DOT code: 209.587-034, reasoning 2); mail sorter (DOT code: 209.687-026, reasoning 3).  The ALJ then found that Rooney was not disabled.  *Id.*at 25.

## IV. Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *See* 42 U.S.C. § 405(g).  If the Court finds substantial evidence supports the final decision, it must uphold it. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  The Court may not set aside a decision that is supported by

5

substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). It means "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). An ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[ ]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id*. at 705-06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id*. at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that they cannot engage in "substantial gainful activity" because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

When reviewing a claim, the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine:

(1) whether the claimant is currently engaged in substantial gainful activity;

6

(2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe;

(3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1;

(4) whether the claimant's impairments prevent them from performing their past relevant work; and

(5) if the claimant is incapable of performing their past relevant work, whether they can perform any other work which exists in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at Step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, they can perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

## V.    Discussion and Analysis

Rooney's appeal focuses on the mental limitation in the RFC limiting her to "[o]nly simple, routine tasks involving simple work-related decisions." ECF No. 12 at 8. Rooney argues the ALJ's RC determination is the product of legal error and is "not properly reconciled with the evidence and the opinions of record [the ALJ] determined were generally persuasive." *Id.* at 1.

Rooney makes three arguments:

> 1) the ALJ provided no explanation as to how "simple, routine tasks" would accommodate Rooney's mental impairments;

7

> 2) the RCF does not incorporate the one-to-two step limitations from the state agency psychologists' opinions; and
>
> 3) the RFC's limitation to limitation to "simple, routine tasks" conflicts with the jobs identified by the Vocational Expert with reasoning levels 2-3.

*Id.* at 8-13.  These are addressed in turn.

### a. The ALJ provided an adequate explanation as to how the "simple, routine tasks" limitation accommodates Rooney's mental impairments

Rooney's first argument focuses on limitations to concentration, persistence, and pace in the RFC.  Rooney argues the ALJ runs afoul of Third Circuit Court of Appeals precedent under *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211 (3d Cir. 2019) (requiring a "valid explanation" for why an ALJ limits a person to "simple tasks" when they have a moderate limitation in concentration, persistence, and pace). ECF No. 12 at 10.  Rooney argues that the ALJ did not offer an explanation "as to how or why simple and routine tasks would accommodate Plaintiff's impairments" after finding she had a "moderate limitation" in concentration, persistence, and pace.  *Id.*  Rooney further argues the "RFC does not truly account for the limitations identified by either physician as there is no limitation within the RFC that accounts for the moderate limitation in concentration." *Id.*

The Commissioner responds that the ALJ adequately explained her decision-making under the standards set forth in *Hess* because the ALJ cited "ample evidence to support her finding that Plaintiff retained the mental capacity to perform 'simple and routine' tasks."  ECF No. 16 at 11.  The Commissioner further

8

argues that the ALJ indeed provided a valid explanation for her limitation on simple and routine tasks by "highlighting factors such as Plaintiff's adequate functioning during mental status examinations, her well-controlled symptoms on medication, and her performance of simple daily activities." ECF No. 16 at 11.

Cited by both parties, the Third Circuit Court of Appeals in *Hess* dealt with the same question currently before the Court – whether an RFC limiting a claimant to "simple tasks" adequately addresses moderate limitations on concentration, persistence, and pace. *Hess,* 931 F.3d at 211. The *Hess* Court held that as long as an ALJ "offers a valid explanation" for why they limited someone with moderate difficulties in concentration, persistence, or pace to "simple tasks," then the RFC adequately accounts for moderate limitations in concentration and the ALJ's finding should be affirmed. *Id.* The Court indicated that an ALJ offers a valid explanation when they consider "mental status examinations and reports that revealed that [the plaintiff] could function effectively; opinion evidence showing that [the plaintiff] could do simple work; and [the plaintiff]'s activities of daily living, which demonstrated that [s]he is capable of engaging in a diverse array of 'simple tasks." *Id.* at 214.

Here, the ALJ addressed the criteria from *Hess* and offered a valid explanation for how a limitation to "simple, routine" tasks adequately accounted for Rooney's difficulties with concentration, persistence, and pace. ***First***, the ALJ explained what factors she considered when determining the RFC mental criteria, finding that Rooney's "mental impairments were generally well-managed through

9

outpatient therapy and medication during the relevant period, despite situational stressors," and that she had "very limited treatment with her psychiatric providers," Michelle Braun and Geena Edmonds. ECF No. 3-2 at 19-20. The ALJ further explained she "incorporated various mental limitations" into the RFC to "accommodate her challenges (including, limited to simple, routine tasks involving simple work- related decisions; occasional interaction with supervisors and coworkers, but no interaction with the general public; and able to tolerate few changes to work process and setting)." *Id*. at 20.

***Second***, as it comes to concentrating, persisting, or maintaining pace specifically, the ALJ considered the *Hess* criteria, including the mental status examinations, opinion evidence, and the plaintiff's activities of daily living, all of which demonstrated her ability to complete simple tasks. The ALJ specifically looked at Rooney's February 10, 2023 psychiatric evaluation which "reflected normal findings as to attention and concentration, long-term and short-term memory, reasoning, simple calculations and serial sevens, and a normal fund of knowledge." *Id*. at 16. The ALJ then noted that the Plaintiff reported "daily activities that include watching television and crocheting, which both inherently require concentration and attention for extended periods of time." *Id*. at 16. The ALJ also noted that "[w]hile [Plaintiff] reports challenges with completing tasks and concentration, especially with situational stressors, she has been involved in high stress situations," and that Rooney "reported that that she finishes the activities

10

she starts (unless she has a panic attack or abdominal pain), and follows instructions well)." *Id.* at 16, 18.

*Third*, the ALJ found that Rooney is able to complete simple tasks because she "demonstrated the ability to manage her mental impairments in a complex situation, specifically involving the custody battle and actively seeking custody of her young grandchildren." *Id.* at 19. The ALJ also found that Rooney is "independent with all of her personal care, performs household tasks, and takes care of her cats on a daily basis, as well as her grandchildren on occasion (while babysitting)," and is able to drive a vehicle and shop outside of her home. *Id.* at 15.

The ALJ's analysis here is similar to recent cases in this Circuit where Courts found an ALJ offered a valid explanation for their decision. For example, in *Weaver v. Saul*, the Court upheld an ALJ's decision where the ALJ explained the plaintiff "regularly engaged in various activities that require concentration, persistence, or pace," that she had "normal intact concentration, attention, and memory," and where the ALJ examined the plaintiff's testimony, aunt's testimony, and the function report submitted by the plaintiff's mother. *Weaver v. Saul*, CV 18-3295, 2019 WL 4220927, at *1 (E.D. Pa. Sept. 5, 2019). *See also Tharp v. Bisignano*, No. 4:24-CV-200, 2025 WL 2472240, at *11 (M.D. Pa. Aug. 27, 2025) ("In the instant case the ALJ fulfilled this duty by crafting an RFC based upon what were the more persuasive and timely medical opinions. Substantial evidence supported the ALJ's conclusions in this regard. Thus, there was no error here"); *Sensenig v. Dudek*, No. 3:24-CV-00170, 2025 WL 896452, at *13 (M.D. Pa. Mar. 24, 2025) ("Relying upon

11

expert opinions, and considering [plaintiff's] activities of daily living, as well as the overall clinical record, the ALJ found that the plaintiff could perform simple tasks."); *Gilbert v. Kijakazi*, No. 1:21-1493, 2022 WL 18396429, at *12 (M.D. Pa. Nov. 29, 2022), *report and recommendation adopted*, No. 1:21-1493, 2022 WL 17730879 (M.D. Pa. Dec. 16, 2022) ("[T]he ALJ has offered a valid explanation for this mental RFC, an explanation which draws substantial support from the clinical and medical opinion record").

The ALJ thoroughly recited the evidence in this case and supported her limitation of "simple, routine jobs" with valid evidence. The RFC therefore properly accounted for Rooney's difficulties in concentrating, persisting, and maintain pace. Accordingly, the ALJ's decision is upheld.

### b. The ALJ did not commit legal error by omitting one and two step task limitations from the RFC

Rooney also argues the ALJ committed legal error because the ALJ did not incorporate a limitation on one and two step tasks into the RFC, as suggested by the state psychologists, and did not provide a logical explanation for the omission. ECF No. 12 at 9. More specifically, Rooney argues that it appears the ALJ intended to base the mental RFC on the state agency psychologists' opinions but instead omitted one of their key opinions without an explanation – that the plaintiff be limited to one to two step tasks. *Id.* In opposition, the Commissioner argues "[t]here is no categorical rule requiring an ALJ to adopt, or explicitly reject, every feature of a medical opinion that the ALJ discussed and found generally or somewhat persuasive," and that the ALJ cited ample evidence to support her

12

mental capacity finding. ECF No. 16 at 10-11. Rooney replies that even if the ALJ was not required to adopt every finding by the state psychologist, the ALJ still did not offer any explanation about why she omitted the one and two step tasks limitation even when she found the opinions persuasive. ECF No. 17 at 2. Rooney's argument is not persuasive.

The Court finds the ALJ did not commit a legal error in choosing to omit the one and two step tasks limitation from the RFC. Here, the ALJ was only "generally persuaded" by the opinions of the two state psychologists and instead modified the RFC based on Rooney's testimony. ECF No. 3-2 at 20. Where an ALJ finds a medical opinion only "generally persuasive," an ALJ is "under no obligation to adopt all of the limitations to which these doctors opined," including a limitation to one and two step tasks. *Reichenbach v. Comm'r of Soc. Sec.,* No. CV 23-1100, 2024 WL 4336301, at *1 (W.D. Pa. Sept. 26, 2024) (finding no obligation to incorporate one to two steps tasks where the opinion is only "generally persuasive"). The ALJ was not required to incorporate the one and two step tasks limitation into the RFC even though it was recommended by the state psychologists.

The ALJ also did not err in omitting an explanation of this decision in her findings. As the Commissioner points out, the ALJ does not have to incorporate every finding in a persuasive medical opinion or "explicitly reject any part of a persuasive opinion that does not make it into the RFC." *Rentz v. Bisignano*, No. CV 24-1293, 2025 WL 2522379, at *1 (W.D. Pa. Sept. 2, 2025). *See also Wilkinson v. Comm'r of Soc. Sec.*, 558 Fed. Appx 254, 256 (3d Cir. 2014) (stating "[a]s an initial

matter, no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight"). The ALJ was not required to explain the omission since she otherwise supported her limitation of simple tasks, as explained above. *See* § V(a), *supra*. *See also Rentz v. Bisignano*, No. CV 24-1293, 2025 WL 2522379, at *1 (W.D. Pa. Sept. 2, 2025) ("Court finds that the omission of a one- or two-step tasks limitation, and the lack of further explanation of the same, does not undermine the ALJ's decision").

The ALJ was under no obligation to either incorporate everything from the state psychologists' opinions nor exhaustively reject everything she chose not to incorporate. Therefore, there is no legal error and the ALJ's decision will be affirmed.

### c. The ALJ's limitation to "Simple, Routine Tasks" does not conflict with jobs with reasoning levels 2-3

Rooney's third argument centers around the reasoning levels of the jobs selected by the Vocational Expert. ECF No. 12 at 10-11. At Step 5, the Vocational Expert selected jobs with DOT Reasoning Levels 2 or 3. ECF No. 3-2 at 23. *See also* DOT definitions bottle packer (DOT code: 920.685-026, reasoning 2); marker (DOT code: 209.587-034, reasoning 2); mail sorter (DOT code: 209.687-026, reasoning 3). Rooney's argues the ALJ did not resolve the "apparent and unambiguous" conflict between an RFC limitation to "simple tasks," and the demands of jobs with level 2-3 reasoning levels – *i.e.* that the demands of these jobs exceed "simple tasks." ECF No. 12 at 10-11. The Commissioner responds there is

14

no conflict with the simple tasks limitation and the jobs that the ALJ found Rooney could perform at Step Five. ECF No. 16 at 11 (citing *Money v. Barnhart,* 91 F. App'x 210, 215 (3d Cir. 2004) ("[w]orking at reasoning level 2 [does] not contradict the mandate that [a claimant's] work be simple, routine, and repetitive.")).

The Court agrees with the Commissioner. There is no conflict with the ALJ's limitation of "simple, routine tasks" and jobs with reasoning levels 2 or 3. There is no bright-line rule stating when a *per se* conflict exists between an RFC limitation and any certain reasoning level. *Zirnsak v. Colvin,* 777 F.3d 607, 618 (3d Cir. 2014).

DOT reasoning levels "refer to informal and formal levels of education required for satisfactory job performance." *Veronica D. v. Comm'r of Soc. Sec.*, No. 1:24-CV-01326, 2025 WL 2665313, at *5 (M.D. Pa. Sept. 17, 2025) (internal citations omitted). A job's reasoning level "gauges the minimal ability a worker needs to complete the job's tasks themselves." *Id.*

There is no conflict between simple, routine tasks and jobs with a reasoning level of 2. In order to perform a job at reasoning level 2, an individual must be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations. Appendix C - Components of the Definition Trailer, 1991 WL 688702. In *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004), the Third Circuit Court of Appeals found that "[w]orking at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive." *Id.* Additionally, in a recent, similar case from the United States

District Court for the Middle District of Pennsylvania, after the plaintiff argued the ALJ did not address the conflict between an RFC limiting plaintiff to "simple, routine, and repetitive tasks" and jobs requiring a reasoning level of 2, the Court found there was no inherent conflict between jobs with a reasoning levels of 2-3 and simple, routine tasks. *Veronica D.*, 2025 WL 2665313, at *5.

Other Courts in this Circuit have likewise recently found that reasoning level 2 jobs do not contradict a restriction to simple, routine tasks. *See David D. v. O'Malley*, No. 3:22-CV-6413, 2024 WL 4635305, at *14 (D.N.J. Oct. 31, 2024) ("Nor can the Court conclude that a mental limitation to 'simple, routine tasks and ... simple work-related decisions' is inconsistent with the DOT definitions for routing clerk and laundry worker, occupations that require reasoning level 2); *Roecker v. O'Malley*, No. 3:24-CV-47, 2024 WL 3362284, at *10 (M.D. Pa. July 10, 2024) ("We are also constrained to observe that courts have frequently sustained decisions like the ALJ's determination in this case, which found that a claimant could perform SVP level 2 jobs when the ALJ limited the claimant to simple tasks and restricted the claimant's interaction with others."); *Buchinsky v. Kijakazi*, No. CV 20-1906, 2022 WL 2987138, at *1 n. 1 (W.D. Pa. July 28, 2022) ("[R]easoning level of 2 does not contradict a restriction to simple, routine, and repetitive tasks[.]").

There is also no conflict between simple, routine tasks and jobs with a reasoning level of 3. In order to perform tasks at a reasoning level of 3, an individual must "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems

16

involving several concrete variables in or from standardized situations." Appendix C - Components of the Definition Trailer, 1991 WL 688702. The Third Circuit Court of Appeals in *Zirnsak v. Colvin* found no "inherent conflict" between a job requiring level 3 reasoning and a limitation to simple, routine tasks. 777 F.3d 607, 618 (3d Cir. 2014). Additionally, several District Courts within this Circuit have found there is no *per se* conflict between jobs with level 3 reasoning and a limitation to simple, routine tasks. *See Veronica D.*, 2025 WL 2665313, at *6 (finding no conflict between simple, routine tasks and jobs with reasoning level of 3); *Reichenbach v. Comm'r of Soc. Sec.,* No. CV 23-1100, 2024 WL 4336301, at *1 (W.D. Pa. Sept. 26, 2024) (same).

Rooney notes the Commissioner only focused on jobs with a Reasoning Level of 2 in his response brief, and Rooney argues the Commissioner has "seemingly conced[ed] that the RFC would not be consistent with jobs at reasoning level 3." ECF No. 17 at 3. While the Commissioner did not address jobs with reasoning level 3 in his Opposition brief, that does not mean the ALJ made a legal error at Step 5 by finding Rooney could perform jobs with a Reasoning Level of 3. The ALJ's decision will therefore be affirmed.

### VI. Conclusion

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying these claims will be AFFIRMED. Plaintiff's Motion for Summary Judgment is denied. An appropriate order follows.

DATED this 29th day of December, 2025.

                                      BY THE COURT:

                                      <u>s/Christopher B. Brown</u>
                                      United States Magistrate Judge